## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

ÁNGEL L. NEGRÓN-MARTY, *et al.*,

    Plaintiffs,

    v.                                 Civil No. 09-2201 (BJM)

WAL-MART PUERTO RICO, INC.,

    Defendant.

### OPINION AND ORDER

Ángel L. Negrón-Marty ("Negrón"), his wife Maribel Orengo-Echevarría ("Orengo"), and their conjugal partnership (collectively, "plaintiffs") sued Wal-Mart Puerto Rico, Inc. ("Wal-Mart"), alleging employment discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, Law No. 44 of July 2, 1985 ("Law 44"), 1 L.P.R.A. §§ 501 *et seq.*, Law No. 100 of June 30, 1959 ("Law 100"), 29 L.P.R.A. §§ 146 *et seq.*, Law No. 115 of December 20, 1991 ("Law 115"), 29 L.P.R.A. §§ 194a *et seq.*, as well as unjust dismissal in violation of Law No. 80 of May 30, 1976 ("Law 80"), 29 L.P.R.A. §§ 185a *et seq.*, and tort liability under Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141. (Docket No. 1).

Before the court is Wal-Mart's motion for summary judgment on all claims. (Docket No. 16). Plaintiffs opposed the motion (Docket No. 31), Wal-Mart replied (Docket No. 38), and plaintiffs filed a sur-reply (Docket No. 57). In addition, Wal-Mart moved to strike portions of Negrón's statement under penalty of perjury, (Docket No. 39), which plaintiffs opposed (Docket No. 58); Wal-Mart replied (Docket No. 64) and plaintiffs filed a sur-reply (Docket No. 67). This case is before me by consent of the parties. (Docket No. 25). For the reasons that follow, Wal-Mart's motion for summary judgment is **granted in part and denied in part**.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts of the case are summarized here after applying Local Rule 56, which structures the presentation of proof at summary judgment.[1]

### Employment with Wal-Mart and Wal-Mart's Policies

On September 29, 1997, Negrón began work as a sales associate at a Wal-Mart store in Ponce, Puerto Rico. (Docket No. 18, hereinafter "Def. St.," ¶ 1). At the time he was terminated on November 7, 2008, Negrón was Department Manager for the School Supplies Department. (Def. St., ¶ 2). He was 44 years old at the time he was terminated. (Def. St., ¶ 48).

Negrón signed an acknowledgment of receiving Wal-Mart's employee handbook on September 19, 1997. (Def. St., ¶ 3). That handbook includes policies against discrimination, harassment, and retaliation. (Def. St., ¶ 4). Negrón was aware of the policies, received formal training in them, and knew that he should immediately report any discrimination to a supervisor. (Def. St., ¶ 5). Wal-Mart also offered a 1-800 number for its employees to report discrimination. (Def. St., ¶ 6). The company's "Open Door Policy" provided another avenue for complaints. (Def. St., ¶ 7). The Store also had written descriptions of its policies on a bulletin board. (Def. St., ¶ 8). Wal-Mart's policy sets out instructions regarding to whom employees may report discrimination and harassment. (Def. St., ¶ 53).

---

[1] The rule "relieve[s] the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute," CMI Capital Market Inv. v. González-Toro, 520 F.3d 58, 62 (1st Cir. 2008), and prevents parties from "shift[ing] the burden of organizing the evidence presented in a given case to the district court." Mariani-Colón v. Dep't of Homeland Sec., 511 F.3d 216, 219 (1st Cir. 2007). The penalty for noncompliance is severe: "If the party opposing summary judgment fails to comply with Local Rule 56(c), the rule permits the district court to treat the moving party's statement of facts as uncontested." Id. Thus, litigants ignore the rule "at their peril." Id.

A motion for summary judgment must be supported by "a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." Local Rule 56(b). The opposing party must admit, deny, or qualify the moving party's facts by reference to each numbered paragraph, and may make a separately numbered statement of material facts. Local Rule 56(c). The moving party may reply and admit, deny, or qualify the opponent's newly-stated facts, again in a separate statement and by reference to each numbered paragraph. Local Rule 56(d). Any facts supported by citation to record evidence and not properly controverted as described by the rule are deemed admitted. Local Rule 56(e).

Another formal policy entitled "Coaching for Improvement" defines a progressive discipline policy with four levels of discipline: unwritten warnings ("Verbal Coaching"), a meeting accompanied by a written warning ("Written Coaching"), a meeting and written warning followed by one day of mandatory paid leave and a follow-up meeting ("Decision-Making Day"), and ultimately, termination.  (Def. St., ¶¶ 10-12).  Depending on the circumstances, the policy does not require each lower step to be followed before proceeding at a higher step; for instance, certain types of conduct may result in immediate termination. (Def. St., ¶ 13).  Negrón was familiar with this system.  (Def. St., ¶ 14).

### The 2007 Performance Reviews

A written performance review form dated May 15, 2007 states that Negrón receieved verbal discipline regarding his performance level in "inventory results."  (Def. St., ¶ 16).  The form states that Negrón's department was expected to have inventory results of "-.85% or less," and that the actual performance was "-1.65% vs. sales."  (Def. St., ¶¶ 16-18).  According to the statement of Zoraida Vecchioly Rivera ("Vecchioly"), the Store Manager, "the same admonishment was issued to all associates in the School Supply Department . . . ."  (Def. St., ¶ 19).  Negrón denies having received this warning, however.[2]  (Docket No. 31-1, hereinafter "Pl. St.," ¶ 16).  He also denies that the inventory results were negative.  (Pl. St., ¶ 19).

---

[2] Wal-Mart moved to strike Negrón's statement under penalty of perjury in its entirety.  (Docket No. 39).  The motion largely consists of comments such as "Paragraph 13 – Contains conclusory allegations without any evidence corroborating this statement; no specific acts but only vague generalities.  *See* FRE 801-803."  (Docket No. 39, p. 6).  I remind Wal-Mart's counsel of the aphorism about the pot and the kettle, and of the rule that litigants may not prevail on arguments made "in the most skeletal way, leaving the court to do counsel's work."  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).  Much of Wal-Mart's motion consists of arguments about what contrary conclusions should be drawn from its own evidence, and arguments about the case as a whole.  (See, e.g., Docket No. 39, p. 6) ("Negrón wrote this letter because it is company policy to do so and the paragraph clearly shows his unwillingness to abide by company policy without good cause.").  Since such arguments do not go to the question of whether portions of Negrón's statement are admissible, I have disregarded them as irrelevant.

Nevertheless, I have disregarded portions of Negrón's statement that assert legal conclusions, address matters outside of Negrón's demonstrated personal knowledge, or are otherwise inadmissible.  However, Wal-Mart has not pointed out any other problems that warrant striking the statement as a whole; therefore, the motion to strike (Docket No. 39) is **denied.**

A written performance review form dated June 20, 2007 states that Negrón cashed a check on June 2, 2007 "which showed that the account was closed," and that "[t]his same situation took place in previous months with a shares check." (Def. St., ¶ 20; Docket No. 18-7, p. 2). The performance review states that a failure to correct the issue will result in "Decision Day" discipline. (Def. St., ¶ 24). Vecchioly stated that "[a] similar situation happened back in 2006." (Def. St., ¶ 23).[3] The policy on returned checks written by associates to Wal-Mart authorized discipline, including termination, as a consequence. (Def. St., ¶ 22). Negrón testified that he was not aware he could be disciplined for cashing a bad check made out to him by a third party, and did not believe the disciplinary policy applied unless he was the one who made out the check himself.[4] (Pl. St., ¶ 21).

A written performance review form dated December 7, 2007 states that Negrón took a 24-minute break on December 4, that he was under "Decision Day" status, and that Negrón would be subject to dismissal for failure to correct the problem. (Def. St., ¶¶ 26, 28). A policy states that employees may only take breaks of up to 15 minutes. (Def. St., ¶ 27). Negrón did not sign the performance form, but wrote a letter dated December 11, 2007 acknowledging the violation. (Def. St., ¶ 29). Negrón stated that he only wrote the letter because he would be terminated if he did not. (Pl. St., ¶ 29). Negrón denies taking a 24-minute break, and denies having ever violated the 15-minute break rule; he asked Vecchioly to provide evidence of how long he went on break, but she did not do so. (Pl. St., ¶ 26).

### The December 2007-January 2008 Leave of Absence

On December 10, 2007, Wal-Mart received a letter written by Dr. Carmen L. Maldonado

---

[3] Although plaintiffs argue that Negrón had never previously issued a check returned for insufficient funds, the cited portion of his statement (Docket No. 31-2, ¶ 9) does not support this contention.

[4] Negrón's statement also asserts that another (younger) employee did not receive formal discipline from Vecchioly, but does not establish a foundation for his personal knowledge of whether that other employee was disciplined. (See Docket No. 31-2, ¶ 9). Therefore, I have disregarded that portion of his statement.

Buitrago ("Dr. Maldonado") stating that she would like Negrón to stay home from work until December 16, 2007, that she would perform a psychometric evaluation, and that Negrón had a nervous breakdown affecting his job performance. (Def. St., ¶ 30). On December 11, 2007, Wal-Mart received a medical absence certificate from Instituto de Medicina de Familia del Sur ("Instituto") stating that Negrón was sick as of December 11, and could not resume his duties until further notice. (Def. St., ¶ 31). Wal-Mart approved a leave of absence with reduced hours from December 10 through December 16, 2007, and continuous leave from December 23, 2007 through January 14, 2008. (Def. St., ¶ 32). Dr. Maldonado provided another letter on December 23, 2007 stating she would need three weeks to decide whether he could return to work. (Def. St., ¶ 33).

On January 14, 2008, Negrón told Vecchioly that he was ready to return to work even though his medical certificate said he could not yet work; Vecchioly insisted on a medical certificate stating he could return to work. (Def. St., ¶ 34). On January 15, Dr. Maldonado sent Wal-Mart a letter stating he could return to work on January 21, 2008. (Def. St., ¶ 35). Wal-Mart also received a letter from Instituto on January 15 stating Negrón could return to work on January 21. (Def. St., ¶ 36). Wal-Mart extended Negrón's leave of absence through January 21. (Def. St., ¶ 37). On January 17, 2008, Dr. Maldonado sent Wal-Mart a letter stating that she had referred Negrón to the State Insurance Fund ("SIF") for evaluation and treatment. (Def. St., ¶ 38). Also on January 17, Wal-Mart received a letter from the SIF indicating he would receive treatment while working, and that his condition was still pending determination. (Def. St., ¶ 39).

### *Negrón's Working Environment*

Negrón returned to work as Department Manager for the School Supplies Department on January 21, 2008. (Def. St., ¶ 40). Following his return, Vecchioly removed four of the five part-time employees from the department, leaving him with only one part-time employee. (Pl.

St., ¶ 40).  His supervisors, Vecchioly, Gustavo Jordan ("Jordan"), and Sheila Pérez ("Pérez"), would "constantly" visit the department and tell him to work faster or else he would be discharged.  (Pl. St., ¶ 40).  They told him that his medical leave requests negatively affected his performance, that they were tired of his leave requests, and that he would be fired if he were absent again for a medical appointment.  (Pl. St., ¶ 40).[5]  Negrón testified that following his admission to a hospital, his shift schedule was changed.  (Pl. St., ¶ 40).  He also testified that he was assigned more merchandise to shelve than he could in the time allotted.  (Pl. St., ¶ 40).

Negrón testified that he had complained of being called a "crazy old man" to Personnel Manager Doris Donate ("Donate"), District Manager Gilberto Rosa ("Rosa"), and Idelina Lebrón ("Lebrón") on more than one occasion.  (Docket No. 31-1, hereinafter "Pl. St.," ¶ 9).  Negrón also complained about changes in his shifts, the imposition of unreasonable deadlines, and the removal of assistants assigned to him.  (Pl. St., ¶ 9).  Negrón also stated that Vecchioly, Jordan and Pérez "constantly, on a daily basis" told him he would be terminated for not meeting the company's expectations.  (Pl. St., ¶ 17).  According to Vecchioly's statement, Negrón never complained to her of age discrimination, and "never used an Open Door Policy with [her]" to complain of any kind of discrimination.  (Def. St., ¶ 51).[6]

Negrón testified that Vecchioly, Jordan, and Pérez resisted his requests for leave to attend

---

[5] Wal-Mart broadly characterizes Negrón's account as hearsay.  However, Negrón's version of his supervisors' comments are not offered for the truth of the matter asserted (whether Negrón really was performing poorly in some objective sense, or whether he would be fired if he took further medical leave), but rather for the fact that the comments were uttered at all—something Negrón has first-hand knowledge of, and which reduces to a question of credibility, not admissibility.  On the other hand, Negrón also testified about a conversation with Agustín Rodríguez, allegedly a Wal-Mart supervisor, in which Rodríguez related a conversation he had with Vecchioly. Unlike the other conversations Negrón relates, this is a secondhand account, and plaintiffs never explain why it should be admissible against Wal-Mart under an exception to the hearsay rule.  Accordingly, I have disregarded Negrón's secondhand account of what Vecchioly told Rodríguez as hearsay.

[6] Wal-Mart only cites Vecchioly's statement (Docket No. 18-1) for the proposition that Negrón never "submitted a claim" of harassment or retaliation of any kind.  (Def. St., ¶¶ 51-52).  But whether a particular complaint was one of discrimination is a legal conclusion; thus, at best, Vecchioly's statement avers that she never perceived any complaint to be of age discrimination.  Wal-Mart also cites her statement to support the proposition that Negrón never complained to anyone of being called a "crazy old man" or "old man."  (Def. St., ¶ 55).  But Vecchioly's statement is silent as to whether he ever made this specific complaint to her, and her statement does not establish how she can have personal knowledge of whether he so complained to anyone else.

SIF appointments, and told him that "what [he] was looking for was Social Security." (Pl. St., ¶ 54). Negrón also testified that he asked to be transferred to another area of the store. (Pl. St., ¶ 54). Vecchioly stated that Negrón never requested a transfer to any other area of the store. (Def. St., ¶ 54). Negrón's wife, Orengo, testified that she did not know whether Negrón had requested any type of accommodation or concession from Wal-Mart. (Def. St., ¶ 54). Orengo was not aware of any time Wal-Mart did not allow Negrón to attend a medical appointment. (Def. St., ¶ 56). Vecchioly stated that Wal-Mart routinely granted Negrón's requests for time off to go to medical appointments with the SIF. (Def. St., ¶ 56). Wal-Mart did not deny Negrón's requests for vacation time. (Def. St., ¶ 57).

Negrón generally points to a collection of SIF medical records as evidence of depression. (Pl. St., ¶ 49). He also asserts that he is not able to sleep, eat, drive, "engage in any reproductive activity," or perform household chores, and that he has suffered from suicidal thoughts. (Pl. St., ¶ 49).[7] He stated that his emotional condition followed an incident where Vecchioly accused him of stealing merchandise from the store, and that he never suffered emotional or mental disorders or sought psychiatric treatment prior to that incident. (Pl. St., ¶ 50).

### *The November 1, 2008 Absence and Termination*

A leave request form dated October 24, 2008 indicates that Negrón was granted vacation time between October 25 and October 31, 2008. (Def. St., ¶ 41). Negrón states that he requested this leave "well before" that date.[8] (Pl. St., ¶ 41). A schedule report dated October 18, 2008 and

---

[7] His statement also averred that he was diagnosed with severe major depression, but Wal-Mart correctly observes that Negrón is not qualified to state a medical diagnosis or summarize medical evidence.

[8] Wal-Mart objects that this contradicts his deposition testimony that he did not make a *written* request for leave. An affidavit, particularly one created to oppose summary judgment, may be disregarded if it contradicts clear answers to unambiguous questions and does not explain the change in testimony. Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4–5 (1st Cir. 1994). Yet there is no contradiction here: Negrón now states that he *orally* sought permission on some date prior to October 24, and does not repudiate his testimony about making written requests. Wal-Mart's point that "Negrón does not provide any date of this alleged request, its place, or corroborat[ing] evidence of said request" may go to the weight due this statement, but not its admissibility. (See Docket No. 39, p. 9).

entitled "Final Copy" listed work schedules for the week running from Saturday, November 1, 2008 through Friday, November 7, 2008, and showed Negrón working on November 1, 2008. (Def. St., ¶ 42). According to Vecchioly, she lacked discretion to extend his time off through November 1, 2008 because he had already been scheduled for that date for three weeks. (Def. St., ¶ 43). But Negrón testified that he asked Vecchioly to extend his leave until November 3, and that she told him it would be fine because he had enough vacation time to handle it. (Pl. St., ¶ 41). He added that since Vecchioly told him it was fine, he did not seek to alter his request for leave. (Pl. St., ¶ 41).

Negrón did not report to work on November 1, 2008, and did not attempt to contact his supervisor or any other Wal-Mart employee that day. (Def. St., ¶ 45). Negrón stated that nobody attempted to contact him that day. (Pl. St., ¶ 45). Wal-Mart's "Attendance Punctuality Policy" considers an absence coupled with a failure to call in a "No Call / No Show," which triggers discipline under the coaching system. (Def. St., ¶ 45). Negrón had not previously been warned for violation of the attendance policy. (Pl. St., ¶ 45).

Negrón was terminated on November 7, 2008; the "exit interview form," signed by "[illegible] Pérez" and "Zoraida [illegible]," indicates that he was terminated for violation of the absence and tardiness policy. (Def. St., ¶ 46). Negrón does not believe his supervisors investigated the matter of whether Vecchioly orally granted him an additional day of vacation. (Pl. St., ¶ 46). Negrón understands Wal-Mart's disciplinary policy as allowing, but not strictly requiring, termination for an infraction during the one-year period following a "Decision-Making Day" coaching. (Pl. St., ¶ 46). Negrón testified that Vecchioly, Jordan, and Pérez laughed when they told him that he was terminated. (Pl. St., ¶ 46). That morning, Negrón had been given "Top Performance Department" awards for July and August 2008. (Pl. St., ¶ 16). Negrón was replaced on December 20, 2008 by 41-year-old Alberto Ocasio, who had previously been the

Department Manager of the Automobile Department.  (Def. St., ¶¶ 62-63).

### *Administrative Proceedings*

The Department of Labor issued a determination with a "delivery date" of November 24, 2008, stating that Wal-Mart did not provide evidence of any violation of the employer's norms, and that Negrón was therefore entitled to unemployment benefits for an unspecified range of time.  (Pl. St., ¶ 65).  Negrón filed an EEOC charge on December 17, 2008.  (Def. St., ¶ 58).  In a determination dated September 18, 2009, the SIF found Negrón's emotional condition was not related to his work, and closed his SIF case.  (Def. St., ¶ 50).

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material only if it "might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and "[a] 'genuine' issue is one that could be resolved in favor of either party." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).  The court does not weigh the facts, but instead ascertains whether the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Leary v. Dalton, 58 F.3d 748, 751 (1st Cir. 1995).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [evidence] . . . which it believes demonstrate the absence of a genuine issue of material fact."  Crawford-El v. Britton, 523 U.S. 574, 600 n.22 (1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)); Fed. R. Civ. P. 56(c)(1).  Once this threshold is met, the burden shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

However, the court draws inferences and evaluates facts "in the light most favorable to the nonmoving party," Leary, 58 F.3d at 751, and an evaluating court may not "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon the facts of the record." Greenburg v. P.R. Maritime Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). Nonetheless, summary judgment is appropriate where the nonmoving party rests entirely upon "conclusory allegations, improbable inferences, and unsupported speculation" on any essential element of the claim. Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

## DISCUSSION

Plaintiffs allege that Wal-Mart (1) failed to provide Negrón with a reasonable accommodation, (2) discriminated against him because of his age and disability, which included (3) inflicting a hostile work environment, and (4) retaliated against him for requesting accommodations and opposing the discrimination against him. In addition to bringing these claims under the ADEA, ADA, and parallel Commonwealth statutes, plaintiffs also allege that Wal-Mart is liable for under Law 80 for severance pay, and for tort damages under Article 1802 of the Puerto Rico Civil Code. Wal-Mart seeks summary judgment on all claims.

## I.      Duty to Provide Reasonable Accommodations

Plaintiffs argue that Wal-Mart failed to satisfy several of Negrón's workplace requests, violating its duty to provide reasonable accommodations under the ADA. Wal-Mart counters that Negrón never requested any accommodations, and that in any case it granted most of his requests. The ADA requires employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). To state a claim under this requirement, a plaintiff must show that she (1) had a disability as defined by the ADA, (2) was able to perform the "essential functions" of the job,

"with or without reasonable accommodation," and (3) that the employer "knew of her disability and did not reasonably accommodate it." Valle-Arce v. P.R. Ports Auth., 651 F.3d 190, 198 (1st Cir. 2011).  Wal-Mart challenges each element of the claim.

### A.     Disability under the ADA

Plaintiffs argue that Negrón was disabled within the meaning of the ADA because he suffered severe depression.   To demonstrate a disability within the meaning of the ADA, a plaintiff must (1) establish a physical or mental impairment, (2) demonstrate that the impairment affects major life activities, and (3) show that the impairment "substantially limits" such life activities.[9]  Ramos-Echevarría v. Pichis, Inc., 659 F.3d 182, 187 (1st Cir. 2011).  "Major life activities are basic activities of daily life that an average person in the general population can perform with little or no difficulty—'functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'"  Id. (quoting 29 C.F.R. § 1630.2(i) (1991)).  A substantial limitation is one which is "permanent or long-term," and there must be evidence of the substantial limitations on the particular plaintiff; a medical diagnosis alone is not enough.  Id. (citing Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198 (2002) and Carroll v. Xerox Corp., 294 F.3d 231, 238 (1st Cir. 2002)).

Wal-Mart states that the medical certificates it received indicate a diagnosis of "an obsessive compulsive disorder and depression" in December 2007.  (Docket No. 16, p. 14).  As a general principle, and one that Wal-Mart does not contest, depression may—depending on individual circumstances—be considered a mental impairment within the meaning of the first element.  See Calero-Cerezo, 355 F.3d at 20-21 (collecting cases).  But to survive summary judgment, plaintiffs must also submit sufficient evidence of the individualized effects and

---

[9] The events at issue in this case occurred prior to January 1, 2009, when amendments to the ADA broadening its definition of disability became effective.  Because the amendments are not retroactive, I analyze Negrón's claims under the old law.  See Valle-Arce, 651 F.3d at 198 n. 5.

substantial limitations on Negrón's major life activities.

In arguing that he has a cognizable disability, plaintiffs paraphrase the following portion

of Negrón's statement under penalty of perjury:

> 27.    Before my termination, since 2007 and even as of today, I was
> diagnosed as suffering from a severe major depression. As a result of my severe
> major depression, and notwithstanding the psychiatric treatment received by me
> and the medications taken by me, I was substantially limited and could not
> perform the following daily life activities: I was unable to sleep, nor eat, and had
> also suicidal ideas. My memory was also affected, and as a result, I forgot about
> things. I also could not engage in any reproductive activity. I also was not able to
> perform any house chores. I also, after my termination on November 7, 2008, and
> even as of today, have not been able to work nor drive, nor sleep.

(Docket No. 31-2, ¶ 27).   Wal-Mart takes issue with Negrón's reference to severe major

depression, observing that he is not a physician and thus is not qualified to make medical

conclusions.   (Docket No. 39, p. 10).   Picking this fight is puzzling in light of Wal-Mart's

concession that Negrón was diagnosed with depression, and in any case I do not read this

statement as stating Negrón's own medical opinion.   Nonetheless, Negrón's statement relates an

unnamed third party's diagnosis of "severe major depression," and is being offered for the truth

of whether he has that condition.   Plaintiffs "did not proffer affidavits from any of [Negrón's]

supposed informants, nor [have plaintiffs] attempted to show the origins of whatever knowledge

they may have had."   Hannon v. Beard, 645 F.3d 45, 49 (1st Cir. 2011).   In short, the assertion is

hearsay and must be disregarded at summary judgment.   See id.

So, stripped of hearsay and legal buzzwords, Negrón's evidence reduces to this:

beginning sometime in 2007 and through at least June 3, 2011 (the date of the statement), he has

undergone some unidentified psychiatric treatment and has taken unidentified medications, but

nonetheless reports that he has been unable to sleep or eat, has had suicidal thoughts, has had

problems with his memory, has not been able to engage in sexual intercourse, and has not been

able to perform household chores.   Additionally, he has not worked, driven, or slept since

November 7, 2008.[10]  This evidence is not particularly probative of the relationship between
Negrón's diagnosed depression and the effect of that depression on his major life functions.  But
Wal-Mart's only argument against Negrón's asserted disability is that the statement
accompanying his EEOC charge does not refer to severe depression.  (Docket No. 38, p. 5).
Wal-Mart never explains how this omission would undermine Negrón's claim of disability;
indeed, Wal-Mart draws no conclusion at all from this observation.  Wal-Mart also asserts that
the complaint does not refer to depression; whatever significance that might have had if true,
Wal-Mart is wrong.  (See Docket No. 1, ¶¶ 2-3).  Since litigants waive "claims not made or
claims adverted to in a cursory fashion," I do not consider this point any further.  See Velásquez
Rodríguez v. Mun'y of San Juan, 659 F.3d 168, 175 (1st Cir. 2011).

        In the end, a rational jury could infer that depression limited Negrón's capacity for
several life activities, based on the medical evidence of depression identified by Wal-Mart
together with Negrón's subjective account of his difficulties.  See Calero-Cerezo, 355 F.3d at 21
(accepting unchallenged evidence of depression's effects at summary judgment).  And given
Negrón's account that his conditions were not ameliorated by whatever treatment he sought,
including the span of nearly a year between his diagnosis in December 2007 or January 2008 and
his termination in November 2008, a jury could also find these limitations to be substantial.

        **B.    Otherwise Qualified Individual**

        Wal-Mart next argues that Negrón was not an otherwise qualified individual under the
ADA.  In opposing summary judgment, plaintiffs assert that "Negrón could perform, and indeed

---

[10] Plaintiffs' statement of facts also generally cites "Exhibit 3," a collection of SIF medical documents,
without citing any particular pages, paragraphs, or even specific statements from that set.  (Pl. St., ¶ 49; Docket No.
61-1).  They never explain what parts of these documents, if any, support their contentions.  (See, e.g., Docket No.
31, p. 10) ("In the present case, it should be an uncontested fact that the plaintiff suffers from a severe depression, as
diagnosed by a psychiatrist[,] and that the defendant was fully aware of plaintiff's physical, mental, and emotional
condition.") (no citation provided).  Since building up arguments and marshaling evidence is the role of counsel and
not the court, I give the documents no further consideration.  See Zannino, 895 F.2d at 17.

performed up until his termination, the functions and duties of his position with a reasonable accommodation." (Docket No. 31, p. 10).  In support of this statement, they cite the portion of Negrón's statement describing the effects of his depression, but fail to provide any evidence of what his job functions and duties were, or of how a particular accommodation would have enabled Negrón to perform those functions and duties.  Plaintiffs also point to the awards Negrón's department received in 2008, and the absence of discipline other than the actions they now challenge as discriminatory.  (Docket No. 31, p. 3-5).  The inference to be drawn from this is presumably that whatever his essential job functions might have been, Negrón's department could not have earned performance awards if he were unable to perform them.  For the purposes of summary judgment, this is enough to allow a jury to decide that Negrón was qualified within the meaning of the ADA.  However, as seen below, plaintiffs' reliance on this broad inference proves fatal to his reasonable accommodation action as a whole.

**C.    Knowing Failure to Accommodate**

Wal-Mart next contends that Negrón never requested a reasonable accommodation within the meaning of the ADA.  To sustain a failure to accommodate claim, plaintiffs must demonstrate the reasonability of a proposed accommodation.  Gómez-González v. Rural Opportunities, Inc., 626 F.3d 654, 665 (1st Cir. 2010).  This means there must be evidence that the accommodation will enable the plaintiff to perform the essential functions of the job.  Kvorjak v. Maine, 259 F.3d 48, 55 (1st Cir. 2001).  And "accommodations are only deemed reasonable (and, thus, required) if they are needed because of the disability . . . ."  Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 264 (1st Cir. 1999). "Indeed, simply in explaining how her proposal constitutes an 'accommodation,' the plaintiff must show that it would effectively enable her to perform her job."  Reed v. LePage Bakeries, Inc., 244 F.3d 254, 259 (1st Cir. 2001).  And to trigger the ADA, an employee's cannot merely make "a mundane

request for a change at the workplace"; the request must be "sufficiently direct and specific," and "explain how the accommodation requested is linked to some disability." Id. at 261.

Plaintiffs argue that Negrón requested three accommodations: (1) medical leave and/or time off to recover, (2) a change in his hourly work schedule, and (3) a transfer to a different department or store. (Docket No. 31, p. 10). As Wal-Mart points out, Negrón's account of his ongoing functional limitations, which he describes as resisting psychiatric treatment and medication, undermines plaintiffs' contention that a change in shift, a transfer, or more time off would have improved his ability to work. Compounding this, plaintiffs have offered neither argumentation nor evidence regarding what Negrón's essential job functions were, let alone how the changes he asked for would have enabled him to perform them. This lack of evidence requires the fact-finder to speculate as to whether a particular request was linked to Negrón's disability. While I do not doubt that Negrón's depression is more complex than a total ability or inability to do the work required of his job, this lack of functional detail is the very reason that plaintiffs' accommodation claims cannot survive summary judgment: they have failed to provide evidence that a jury could use to navigate this complex question and decide whether the ADA required Wal-Mart to accommodate Negrón's requests.

Plaintiffs also noted that Wal-Mart never "engaged in any type of conversations with Negrón, in order to try to provide a reasonable accommodation to the plaintiff." (Docket No. 31, p. 12). Though this passing assertion is so skeletal as to be waived, see Zannino, 895 F.2d at 17, I will briefly entertain plaintiffs' allusion to the duty to "engage in an interactive process to determine whether any reasonable accommodations were available." See Richardson v. Friendly Ice Cream Corp., 594 F.3d 69, 82 (1st Cir. 2010). To survive summary judgment, a plaintiff must provide evidence that "the interaction could have led to the discovery of a reasonable accommodation." Id. Thus, where the only accommodations suggested by the plaintiff at

summary judgment are inadequate or unreasonable, the interactive process claim necessarily fails as well, since there is no evidence from which a jury could conclude that an accommodation might have been discovered.  Id.  Here, since plaintiffs have failed to provide anything more than speculation to support a conclusion that Negrón's requests were reasonable, it is equally speculative to conclude that an interactive process would have uncovered a reasonable alternative.

In short, plaintiffs have offered little more than "conclusory allegations, improbable inferences, and unsupported speculation" on this element of the claim, and Wal-Mart is entitled to summary judgment on the reasonable accommodation claim.[11]  See Medina-Muñoz, 896 F.2d at 8.

## II.     Age and Disability Discrimination

I next turn to plaintiffs' claims that Wal-Mart engaged in unlawful age and disability discrimination.  The ADA and ADEA prohibit discrimination in the "terms, conditions, and privileges of employment" on the basis of age or disability, respectively.  29 U.S.C. § 623(a)(1); 42 U.S.C. § 12112(a).  Absent direct evidence of discrimination, a plaintiff may establish an inference of age discrimination under the ADEA by showing that (1) he was at least 40 years old at the time of the adverse action, (2) he was qualified for the position, (3) he suffered an adverse employment action, and (4) the employer demonstrated a continuing need for his services.[12]  Bonefont-Igaravidez v. Int'l Shipping Corp., 659 F.3d 120, 124 (1st Cir. 2011).  Similarly, a

---

[11] I note that I give no weight to Wal-Mart's contention that "Negrón did not request accommodation . . . because he did not proffer in his EEOC charge the 'condition' or 'disability' he suffers . . . ."  (Docket No. 16, p. 12).  Wal-Mart never articulates how the alleged deficiency in the EEOC charge bears on plaintiffs' claims now, and "provides neither the necessary caselaw nor reasoned analysis" to show that it is entitled to summary judgment on that ground.  Velásquez Rodríguez, 659 F.3d at 176.

[12] Wal-Mart argues that ADEA claims cannot be sustained through a burden-shifting framework.  (Docket No. 16, p. 16) (citing Gross v. FBL Fin. Serv., Inc., 129 S. Ct. 2343, 2351 (2009)).  However, the First Circuit held that, notwithstanding dicta in Gross, burden-shifting remains appropriate in ADEA cases.  Vélez v. Thermo King de P.R., Inc., 585 F.3d 441, 447 n. 2 (1st Cir. 2009).

plaintiff may establish an inference of disability discrimination under the ADA by showing that he (1) had a disability within the meaning of the ADA, (2) was qualified to perform the essential functions of the job, "with or without reasonable accommodations," (3) suffered an adverse employment action, (4) was replaced by or treated less favorably than a non-disabled person, and (5) suffered damages as a result.  Ramos-Echevarría, 659 F.3d at 186.  When a plaintiff establishes a prima facie case of discrimination, the employer has the burden of producing a legitimate, nondiscriminatory reason for its action; "[i]f the employer does so, the focus shifts back to the plaintiff, who must show, by a preponderance of the evidence, that the employer's articulated reason for the adverse employment action is pretextual and that the true reason for the adverse action is discriminatory."  Gómez-González, 626 F.3d at 662 (citation and quotation marks omitted).  "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."  Id. at 662-63 (citation omitted).  In age discrimination cases, a plaintiff "must elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: age discrimination."  Meléndez v. Autogermana, Inc., 622 F.3d 46, 52 (1st Cir. 2010) (internal citation and quotation marks omitted).  Similarly, an ADA plaintiff must show an employer's justification to be "mere pretext cloaking discriminatory animus."  Ramos-Echevarría, 659 F.3d at 187.

        Wal-Mart challenges each element of plaintiffs' *prima facie* case; I begin by considering the elements common to all claims, and then address each of the allegedly discriminatory acts that plaintiffs now complain of under the burden-shifting framework.

### A.      Membership in the Protected Class and Qualification for the Position

It is uncontested that Negrón was over age 40 during the events at issue in this case.  And as discussed above, plaintiffs have presented sufficient evidence for a jury to conclude that Negrón was disabled within the meaning of the ADA.  Plaintiffs further argue that, by virtue of Negrón's long employment with Wal-Mart and his department's performance awards, it can be inferred that he was qualified for the position.  (Docket No. 31, p. 3-5).  Wal-Mart argues that Negrón was unqualified because of his disciplinary record.  (Docket No. 16, p. 18).  But the disciplinary actions are themselves among the adverse actions Negrón now alleges to be discriminatory, while Wal-Mart's position is that the discipline was warranted.  An employer's non-discriminatory rationale for taking an employment action cannot be weighed in analyzing a prima facie case, as it may "bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination."  See Meléndez, 622 F.3d at 51 (quoting Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 574 (6th Cir. 2003)).  Since plaintiffs have offered evidence from which a jury could rationally conclude that Negrón was qualified for his position, Wal-Mart is not entitled to summary judgment at this stage of the analysis.

### B.      Replacement by an Insignificantly Younger Employee

Wal-Mart argues that Negrón cannot establish a presumption of age discrimination because it is undisputed that his replacement was only three years younger.  (Docket No. 16, p. 18).  The First Circuit has held that "a three year age difference is too insignificant to support a prima facie case of age discrimination."  Williams v. Raytheon Co., 220 F.3d 16, 20 (1st Cir. 2000) (citing O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312-13 (1996)).

Plaintiffs do not address this argument, and merely state that Wal-Mart "immediately replaced Negrón . . . with a younger employee . . . who was 41 years old, and thus approximately

3 years younger than the plaintiff." (Docket No. 31, p. 8). This is an insignificant difference in age, and as a result, plaintiffs are not entitled to a *prima facie* inference of age discrimination.

### C.      More Favorable Treatment of a Non-Disabled Employee

Wal-Mart argues that Negrón cannot establish a presumption of disability discrimination because he has not provided any evidence that he was treated less favorably than a non-disabled employee. Negrón's statement avers that his replacement "is not a disable[d] individual[,] nor has [he] ever made a request for a reasonable accommodation to the defendant nor has ever complained to Wal-Mart about any unlawful or discriminatory employment practice." (Pl. St., ¶ 62; Docket No. 31-2, ¶ 36). But as Wal-Mart correctly notes, there is no foundation showing how Negrón has personal knowledge of any of this; thus, his statement is not competent evidence of these matters. Moreover, plaintiffs do not argue that any other non-disabled employee was treated better. Since plaintiffs have failed to provide evidence of every element of the *prima facie* case, they cannot rely on a presumption of discrimination to survive summary judgment.

### D.      Direct Evidence of Discriminatory Animus

Because plaintiffs are not entitled to a presumption of discrimination under the *McDonnell Douglas* framework, I consider whether they have nonetheless demonstrated that they can survive summary judgment on the ultimate question of whether Wal-Mart acted with discriminatory intent. A plaintiff may attempt to prove unlawful employment practices based on direct evidence that an adverse employment action was taken because of a prohibited animus. See Weston-Smith v. Cooley Dickinson Hosp., Inc., 282 F.3d 60, 64-65 (1st Cir. 2002) (in Title VII case). Direct evidence includes "[c]omments which, fairly read, demonstrate that a decisionmaker made, or intended to make, employment decisions based on forbidden criteria." Febres v. Challenger Caribbean Corp., 214 F.3d 57, 61 (1st Cir. 2000) (in ADEA case). On the one hand, the bare possibility of an innocent explanation for the statement does not make it any

less direct.  Id.  However, "inherently ambiguous statements do not qualify as direct evidence."
Weston-Smith, 282 F.3d at 65.

Plaintiffs point to portions of Negrón's statement under penalty of perjury and his
deposition testimony to demonstrate Wal-Mart's alleged discriminatory animus.  (Docket No. 31,
p. 7-8, 13; see Pl. St., ¶¶ 40, 50, 55, 56).  Many of the incidents generally cited do not qualify as
direct evidence since they do not demonstrate any particular animus at all.  (See, e.g., Pl. St., ¶
40) (reduction in support staff and increase in workload).  On the other hand, four portions of the
cited evidence do suggest facially suspect motivations:  (1) Negrón's statement that Vecchioly,
Jordan, and Pérez would "tell me that I was old and slow, and that I needed to work faster, or
else was going to be discharged" (Docket No. 31-2, ¶ 14); (2) Negrón's statement that he was
called "'crazy old man' and 'old man,' constantly, on a daily basis" by the three supervisors (id.,
¶ 33); (3) Negrón's testimony that Jordan and Pérez threatened him with termination if he
continued to take medical leave (Docket No. 18-32, p. 33); and (4) Negrón's testimony that an
unidentified "they" told Negrón "on several occasions" that he was actually looking for Social
Security (Docket No. 18-31, p. 38).

I am persuaded that a jury, viewing this evidence in the light most favorable to plaintiffs'
claims, could conclude that the decision to terminate Negrón, rather than employ a less drastic
disciplinary measure, was motivated by Vecchioly, Jordan, and/or Pérez's stated perception that
he was (1) working too slowly due to his age, and (2) was taking too much medical leave
because of his depression.  Wal-Mart counters that Negrón's termination was the result of his
absence on November 3, 2008, as Vecchioly asserted in her statement, and as indicated on the
exit interview she prepared, and correctly observes that Negrón has not corroborated his account
with other witnesses, reducing his case to a he-said/they-said credibility contest.  But credibility
is precisely the type of dispute in evidence that must be resolved by the fact-finder, and which

cannot be determined by summary judgment.  Therefore, Wal-Mart is not entitled to dismissal of the discrimination claims based on his termination and threatened termination.

## III.    Hostile Work Environment

Plaintiffs also oppose summary judgment by arguing that they have shown Negrón suffered a hostile work environment based on his "age, disability, requests for a reasonable accommodation, and opposition against defendant's unlawful employment practices."  (Docket No. 31, p. 17). To prevail on a hostile environment theory, Negrón must "show that his 'workplace [was] permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of . . . [his] employment and create an abusive working environment.'" Quiles-Quiles v. Henderson, 439 F.3d 1, 7 (1st Cir. 2006) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)) (alterations in original).  This breaks down into six elements: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on membership in the protected class; (4) the harassment was severe and pervasive enough to alter the conditions of employment and create a hostile work environment; (5) the conduct was both objectively and subjectively offensive; and (6) some basis for employer liability has been established.  Agusty-Reyes v. Dep't of Educ. of P.R., 601 F.3d 45, 53 n.6 (1st Cir. 2010) (citations omitted).  Although the inquiry is necessarily fact-specific, "summary judgment is an appropriate vehicle for policing the baseline for hostile environment claims." Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 83 (1st Cir. 2006).  Deciding whether conduct is severe and pervasive "requires an assessment of the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  Valentín-Almeyda v. Mun'y of Aguadilla, 447 F.3d 85, 94 (1st Cir. 2006) (quoting Harris, 510 U.S. at 23 (1993)).

As discussed above, plaintiffs have offered evidence of Negrón's membership in both ADA and ADEA[13] protected classes, and Negrón testified that he complained about this conduct to Wal-Mart.  As for the harassing conduct itself, plaintiffs point to (1) Negrón's complaint of being called a "crazy old man"; (2) that he was stripped of his support staff and assigned more work than he could complete in the time allotted; (3) that his supervisors "constantly" told him to work faster, said that his medical leave requests negatively affected his performance, said they were tired of his leave requests, and said he would be fired if he were absent again for a medical appointment; and (4) that his hourly schedule was changed.  (Docket No. 31, p. 18; Pl. St., ¶¶ 9, 20-22, 26, 29, 40-46).  They also argue that he should not have been disciplined or ultimately terminated for the returned check, for allegedly violating the break policy, or for not coming to work on November 3, 2008.  Plaintiffs point to Negrón's self-reported inability to sleep, eat, or perform certain other functions as evidence of the conduct's deleterious effect on him.  (Docket No. 31, p. 18; Pl. St. ¶¶ 49, 50, 64).  Plaintiffs can establish employer liability because the complained-of conduct was allegedly perpetrated by Negrón's supervisors, and Wal-Mart has not articulated an *Ellerth*/*Faragher* defense.  See <u>Pérez-Cordero v. Wal-Mart P.R., Inc.</u>, 656 F.3d 19, 30 (1st Cir. 2011).

Wal-Mart ignores this claim entirely in its motion for summary judgment, and addresses it for the first time in its reply motion.  It first argues that the claim arose "presumably under Title VII, which was not invoked anywhere in the complaint," and seeks dismissal because Negrón never alleged he was discriminated against on the basis of race, color, religion, sex, or national origin.  (Docket No. 38, p. 8).  But plaintiffs' failure to state a Title VII claim is a straw man:  the First Circuit has expressly recognized the viability of ADEA hostile environment

---

[13] Although Wal-Mart's hiring of an insignificantly younger replacement defeats the *McDonnell Douglas*-style presumption of discrimination as discussed above, plaintiffs do not rely on that presumption to survive summary judgment on the hostile environment claim.

claims, see Collazo v. Nicholson, 535 F.3d 41, 44 (1st Cir. 2008), and Wal-Mart does not argue that hostile environments are not actionable under the ADA.[14]

Wal-Mart alternatively argues that a hostile work environment has not been "pleaded, alleged, or much less established by evidence in admissible form." (Docket No. 38, p. 9).  As for pleadings and allegations, the complaint alleges that unnamed Wal-Mart officers often commented on Negrón's medical treatment and sick leaves, accused him of stealing, sabotaged his performance, and criticized him on false grounds.  (Docket No. 1, ¶¶ 10, 12, 14).  The complaint asserted that this conduct "created a hostile working environment, due to Negrón's age, disability, requests for a reasonable accommodation, and opposition against defendant's unlawful employment practices."  (Id., ¶ 26).  I find that this was enough detail to give Wal-Mart "fair notice of the claim and the grounds upon which it rests."  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 8 (1st Cir. 2011); Fed. R. Civ. P. 8(a)(2).  As for "evidence in admissible form," plaintiffs' submission is outlined above; but beyond attacking the admissibility of Negrón's statement under penalty of perjury, see supra note 2, Wal-Mart does not articulate any reason why the evidence is legally insufficient to support a hostile environment claim.  "Judges are not mind-readers, so parties must spell out their issues clearly, highlighting the relevant facts and analyzing on-point authority."  Velásquez Rodríguez, 659 F.3d at 175.

Wal-Mart argues that it "has presented consistent documentary evidence that supports its ultimate decision to terminate Negrón due to his progressive discipline offenses."  (Docket No. 38, p. 9).  This argument is not analytically sound.  Even assuming that a jury accepts Wal-

---

[14] While the First Circuit has reserved judgment on the question, other circuits have held that hostile work environment claims are actionable under the ADA.  See Arrieta-Colón v. Wal-Mart P.R., Inc., 434 F.3d 75, 85 n. 6 (1st Cir. 2006) (affirming jury verdict); Rocafort v. IBM Corp., 334 F.3d 115, 120-21 (1st Cir. 2003) (citing Flowers v. S. Reg'l Physician Serv., Inc., 247 F.3d 229, 235 (5th Cir. 2001) and Fox v. Gen. Motors Corp., 247 F.3d 169, 176 (4th Cir. 2001)).  In addition, prior opinions from this district have held, or at least assumed, that such actions are cognizable.  See Rivot-Sánchez v. Warner Chilcott Co., 707 F. Supp. 2d 234, 269 (D.P.R. 2010) (collecting cases).  Since Wal-Mart does not flag this question, let alone advance any argument on the matter, I will proceed on the assumption that the ADA proscribes discriminatory hostile environments.

Mart's position on the propriety of Negrón's termination or progressive discipline (an assumption Wal-Mart is not entitled to as the summary judgment movant), Wal-Mart fails to explain how his legitimate termination precludes the claim that Negrón's terms and conditions of employment were adversely affected by the "crazy old man" comments, the comments that he was performing poorly because of his medical appointments, or the changes in his workload and support staffing.   In any case, "[s]ubject to some policing at the outer bounds, the hostile environment question is to be resolved by the trier of fact on the basis of inferences drawn from a broad array of circumstantial and often conflicting evidence." Quiles-Quiles, 439 F.3d at 8 (quoting Gorski v. N.H. Dep't of Corr., 290 F.3d 466, 474 (1st Cir. 2002)) (original alteration marks omitted).   And while Wal-Mart correctly notes that plaintiffs offer almost no analysis of the evidence they rely on, I am nonetheless mindful that Wal-Mart's motion for summary judgment did not even address the hostile work environment claims.   Since plaintiffs have, however inartfully, pointed to evidence in support of each element of the hostile environment claims, the claims should survive summary judgment.   Therefore, Wal-Mart's motion for summary judgment is denied as to the hostile environment claims under the ADA and ADEA.

## IV.   Retaliation

Plaintiffs further argue that Negrón was the victim of retaliation for engaging in activities protected by the ADA and ADEA.   The ADA and ADEA prohibit retaliation against an employee for, among other grounds, having "opposed any practice made unlawful" by either act. 29 U.S.C. § 623(d); 42 U.S.C. § 12203(a).   A plaintiff relying on circumstantial evidence of retaliation bears the burden of establishing a prima facie case, to wit: "(1) she was engaged in protected conduct; (2) suffered an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse action." Colón-Fontanez v. Mun'y of San Juan, 660 F.3d 17, 36 (1st Cir. 2011) (under ADA); see Bennett v. Saint-Gobain Corp., 507

F.3d 23, 32 (1st Cir. 2007) (under ADEA).  The defendant in turn must articulate a legitimate,

non-retaliatory reason for the adverse action.  Collazo v. Bristol-Myers Squibb Mfg., Inc., 617

F.3d 39, 46 (1st Cir. 2010).  At the third stage, the burden shifts back to the plaintiff to establish

that the employer's proffered reason is a pretext for retaliation.  Id.  No underlying

discrimination need be proven; "[i]t is enough that the plaintiff had a reasonable, good-faith

belief that a violation occurred; that he acted on it; that the employer knew of the plaintiff's

conduct; and that the employer lashed out in consequence of it."  Mesnick v. Gen. Elec. Co., 950

F.2d 816, 827 (1st Cir. 1991).  In addition to administrative charges, complaints to supervisors

are  protected activities.  Benoit v. Technical Mfg. Corp., 331 F.3d 166, 175 (1st Cir. 2003)

(describing activities under Title VII).  Requesting a reasonable accommodation is also protected

under the ADA.  Valle-Arce, 651 F.3d at 198.  "To defeat summary judgment in a retaliation

case, 'a plaintiff must point to *some* evidence of retaliation by a pertinent decisionmaker.'"

Sánchez-Rodríguez v. AT&T Mobility P.R., Inc., --- F.3d ---, No. 10-2177, slip op. at 29 (1st

Cir. Mar. 8, 2012) (emphasis in original).

### A.      Prima Facie Case

Plaintiffs argue that Negrón engaged in protected activities in two ways: (1) by

requesting medical leave, a change in hourly schedule, and a transfer in department or store

("requests for a reasonable accommodation") and (2) by complaining about being called a "crazy

old man," being assigned unreasonable deadlines and amounts of work, and being deprived of

staff (the "harassing and discriminatory actions").  (Docket No. 31, p. 15).  They allege that

Negrón suffered adverse actions in the form of (1) offensive comments; (2) alterations to

Negrón's work schedule; (3) a reduction in his support staff; (4) alterations to his duties; (5) a

failure to investigate or take action regarding his complaints; and (6) his ultimate termination.

(Docket No. 31, p. 15-16).

I assume for the moment that each of Negrón's activities was protected under one of the statutes, and that each of Wal-Mart's actions were actionably adverse.  Turning to causation, plaintiffs point to the comments supporting their discrimination claims as evidence of "the discriminatory and retaliatory animus" harbored against Negrón.  (Docket No. 31, p. 16).  As discussed earlier, some of these comments were plain threats to terminate Negrón for requesting time off for medical purposes, rendering his actual termination suspect.  But aside from those specific comments, plaintiffs have not shown the causal link matching up any pair of protected activity and adverse action.  The cited comments do not, for instance, suggest any connection between requesting a change of department and losing support staff, or between complaining of being called a "crazy old man" and being given a less favorable schedule.  And to whatever extent some less-obvious chain of causation exists, plaintiffs have offered absolutely no analysis of what, precisely, that chain might be, beyond than the vapid assertion that "there can be no doubt about the fact that there is a causal connection . . . ." (Docket No. 31, p. 16).  Plaintiffs' passing reference to "an extreme [*sic*] close temporal proximity" carries no indication, either in evidence or in argument, of what two events were close in time, or indeed the dates on which any particular pair of events occurred.  "This is hardly a serious treatment of a complex issue," and plaintiffs' failure to analyze this aspect of their *prima facie* case is functionally a waiver of the position.  See Tayag v. Lahey Clinic Hosp., Inc., 632 F.3d 788, 792 (1st Cir. 2011).

In sum, the plaintiffs have only pointed to evidence establishing a *prima facie* presumption of retaliation for Negrón's termination, based on his requests to be excused for medical appointments and his supervisors' negative comments regarding those requests.  Beyond that, plaintiffs have failed to show that a jury could rationally find a causal link between any of his other conduct and the allegedly adverse actions.  Because plaintiffs carry the burden of persuasion at this stage of the analysis, Wal-Mart is entitled to summary judgment on all other

retaliation claims.

To round out the *prima facie* analysis of the surviving claim, I return to the first and second elements of the case.  Since plaintiffs' claim is based on the undisputed fact that Negrón was terminated, I consider whether Negrón made a protected request for accommodation.  A plaintiff need not prevail on a substantive ADA claim in order to prove retaliation.  Carreras v. Sajo, García & Partners, 596 F.3d 25, 35-36 (1st Cir. 2010).  But to trigger an employer's obligations under the ADA, a request must be "sufficiently direct and specific," and "explain how the accommodation requested is linked to some disability."  Reed, 244 F.3d at 261. Negrón's statement asserts that he requested time "in order to be able to go to my different medical appointments," and that the comments calling him a "crazy old man" were in response to his requests to attend medical appointments.  (Docket No. 31-2, ¶¶ 32, 34).  His testimony further refers to his supervisors' opposition to his requests to "go to the [State Insurance] Fund." (Docket No. 18-32, p. 18).  While plaintiffs' development of this point leaves much to be desired, I nonetheless conclude that they have discharged their relatively light burden of pointing to evidence from which a jury could rationally conclude that they engaged in a protected activity. Having discharged the light *prima facie* burden on this portion of their claim, I proceed to the second and third steps of the *McDonnell Douglas* analysis.

### B.        Non-Retaliatory Rationale and Pretext

Wal-Mart's stated non-retaliatory reason for terminating Negrón is that he was absent on November 1, 2008, and that as a "Decision-Making Day" employee, termination was authorized as discipline.  Plaintiffs' argue that a jury may find his firing retaliatory because (1) Vecchioly was the supervisor who, by Negrón's account, orally extended his vacation until November 3, 2008, (2) Vecchioly terminated Negrón for not returning to work on November 1, 2008, and (3) Vecchioly and his other supervisors had made retaliatory comments threatening to fire him.

(Docket No. 31, p. 21-22).   In evaluating pretext, the relevant inquiry is only into the decisionmaker's "motivations and perceptions"; courts must not "review the accuracy or acumen of [the decisionmaker's] position, so long as it is not grounded in discriminatory animus." Bonefont, 659 F.3d at 126 (citing Bennett, 507 F.3d at 32 and Mesnick, 950 F.2d at 824) (alterations in original).   In other words, "the issue is not whether the employer's reasons were real, but merely whether the decisionmakers believed them to be real." Ronda-Pérez v. Banco Bilbao Vizcaya Argentaria-P.R., 404 F.3d 42,45 (1st Cir. 2005) (quoting Mulero-Rodríguez v. Ponte, Inc., 98 F.3d 670, 674 (1st Cir. 1996)) (alteration marks omitted).

Wal-Mart makes much of Negrón's admission that he knew vacation requests had to be written, and that he never made a written request to extend his leave until November 3.   But regardless of whether Negrón's failure to appear on November 1 would be grounds for termination by the book, plaintiffs' theory is that the alleged retaliatory animus put Negrón in that position in the first place, and tainted the decision to firmly enforce the vacation policy. Since the motive attributable to Wal-Mart is genuinely in dispute, it is not entitled to summary judgment.

Wal-Mart also argues that the retaliation claims fail because he was given a raise and positive performance reviews.   (Docket No. 16, p. 21) (citing Bennett, 507 F.3d at 33 and Freadman v. Metro. Prop. and Cas. Ins. Co., 484 F.3d 91, 101 (1st Cir. 2007)).   But positive employment actions are not an affirmative defense to liability; *Bennett* and *Freadman* merely counsel courts to avoid a "narrow focus on timing" and take stock of the "larger sequence of events." See Freadman, 484 F.3d at 100-01.   In both cases, plaintiffs' anemic showings of retaliation were undermined by evidence showing that they actually received positive evaluations from their employers. See Bennett, 507 F.3d at 33 (temporal proximity alone insufficient to establish pretext); Freadman, 484 F.3d at 100-01 (rejecting claim that employer departed from

disciplinary policy).   While I agree that the series of generally positive performance reviews undermines the picture plaintiffs paint of relentless ridicule and constant criticism by spiteful supervisors, I nonetheless conclude that a jury crediting his account could find that Wal-Mart's managers acted against Negrón because of his protected requests for time off, in spite of his routine raises.

Because plaintiffs have demonstrated a triable issue of whether Negrón was terminated because of his supervisors' intent to retaliate for his medical leave requests, Wal-Mart is not entitled to summary judgment on this claim.

**V.      Claims under Puerto Rico Law**

Wal-Mart challenges plaintiffs' claims under Law 44 (disability discrimination), Law 80 (unjust dismissal), Law 100 (age discrimination), Law 115 (retaliation), and the claims of Orengo and the conjugal partnership under Article 1802 of the Civil Code (tort liability). (Docket No. 16, p. 22-29).   Plaintiffs only respond that their Commonwealth claims "are contingent upon plaintiff's ADA and ADEA causes of action," and that "it is [their] position that any discussions with regards to plaintiff's causes of action under the local statutes, should be made after this honorable Court issue[s] an opinion and order with regards to the motion for summary judgment filed by the defendant."  (Docket No. 31, p. 22-23) (punctuation *sic*).   But I decline the invitation to procrastinate, and proceed to evaluate the remainder of Wal-Mart's motion.

**A.      Discrimination Claims**

Wal-Mart's arguments regarding the claims under Laws 44 and 100 are correct as far as they go:  claims under both Commonwealth statutes are, on the merits, coextensive with their corresponding federal claims.  See Ruíz-Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 87 (1st Cir. 2008) (Law 44 and ADA equivalent); Dávila v. Corp. de P.R. para la Difusión Pública, 498 F.3d

9, 18 (1st Cir. 2007) (Law 100 and ADEA substantively[15] equivalent).  Therefore, Wal-Mart is entitled to summary judgment on the Law 44 and Law 100 claims to the same extent it is entitled to summary judgment on the federal failure to accommodate and discrimination claims.

   **B.      Retaliation under Law 115**

Law 115 prohibits discharge, threats, or discrimination against an employee who offers or attempts to offer testimony or information before a legislative, administrative, or judicial forum in Puerto Rico.  29 L.P.R.A. § 194a(a).  To prevail, an employee must first present a prima facie case of (1) participation in a protected activity and (2) adverse employment action.  The burden shifts to the employer to "claim and provide a nondiscriminatory legitimate reason for the discharge."  Finally, the employee "should demonstrate that the alleged reason provided by the employer was a mere pretext for the discharge."  29 L.P.R.A. § 194a(c).

Wal-Mart disputes whether Negrón "engaged in any type of protected conduct at all." (Docket No. 16, p. 27).  As discussed above, plaintiffs chose not to address Wal-Mart's challenges to its Commonwealth claims, and so have not marshaled any evidence of how Negrón has offered, or attempted to offer, testimony or information to a Puerto Rico legislative, administrative, or judicial forum prior to his termination.  And since "highlighting the relevant facts and analyzing on-point authority" is a litigant's job, I will neither scrutinize the record nor scour the caselaw to determine whether any of Negrón's conduct triggers liability under Law 115.  See Velásquez Rodríguez, 659 F.3d at 175.  Since Wal-Mart has demonstrated the absence of evidence on this question and plaintiffs have not responded, it is entitled to summary judgment.

---

   [15] The text of Law 100 prescribes a different burden-shifting framework than the ADEA; however, where there is "no significantly probative evidence" of age animus behind a particular action, the relevant presumptions are not triggered, and summary judgment on both claims is appropriate.  Dávila, 498 F.3d at 18.  Since the only age discrimination claims being dismissed here are those for which plaintiffs failed to either establish a *prima facie* case (there being no substantially younger replacement) or point to any direct evidence of discriminatory intent, further analysis is unnecessary.

### C.      Unjust Discharge under Law 80

Law 80 "requires employers to compensate employees who are discharged without just cause." Baltodano v. Merck, Sharp & Dohme (I.A.) Corp., 637 F.3d 38, 41–42 (1st Cir. 2011). An employee who establishes that he was discharged shifts the burden of persuasion to the employer to prove that the discharge was justified. Id. Law 80 provides a list of just causes for termination. 29 L.P.R.A. § 185b.

Wal-Mart argues that it is entitled to judgment because Negrón violated its reasonable regulations. (Docket No. 16, p. 23-24) (citing Hoyos v. Telecorp Comms., Inc., 488 F.3d 1, 6 (1st Cir. 2007)). But plaintiffs have established a triable question as to whether Negrón's termination was motivated by discrimination or retaliation, neither of which are just cause under § 185b. Therefore, Wal-Mart is not entitled to summary judgment on this claim. See also Oliveras Zapata v. Univision P.R., Inc., Civil No. 09-1987 (BJM), 2011 WL 4625951, at *21 (D.P.R. Oct. 3, 2011).

### D.      Article 1802 Claims

Finally, Wal-Mart argues that the tort claims of Orengo and the conjugal partnership are time-barred. Article 1802 of the Civil Code establishes liability for "[a] person who by an act or omission causes damage to another through fault or negligence." 31 L.P.R.A. § 5141. Actions for "obligations arising from the fault or negligence mentioned in section 5141" are subject to a one-year statute of limitations. 31 L.P.R.A. § 5298; Ramos Lozada v. Orientalist Rattan Furniture, Inc., 130 D.P.R. 712, 718, 1992 P.R.-Eng. 755,597. An action under article 1802 accrues, starting the one-year clock running, when "the aggrieved party knows (or should have known) of both his injury and the identity of the party who caused it." González Figueroa v. J.C. Penney P.R., Inc., 568 F.3d 313, 318 (1st Cir. 2009).

Here, plaintiffs filed their original complaint on November 25, 2009, meaning that only

claims that had not prescribed prior to November 25, 2008 are timely.   It is undisputed that Negrón was fired on November 7, 2008.  Since plaintiffs filed suit over a year after Negrón's termination, they have the burden of proving that they did lacked the requisite knowledge until a later date.  See Torres v. E.I. Dupont De Nemours & Co., 219 F.3d 13, 19 (1st Cir. 2000).  They have not attempted to do so.  And since plaintiffs do not raise the argument, I need not explore why Negrón's administrative charge would not change the outcome; I merely highlight the First Circuit's analysis that derivative Article 1802 claims "lie beyond the reach" of  any tolling effect of an employee's EEOC charge.  See González Figueroa, 568 F.3d at 322.

In sum, Wal-Mart has demonstrated that it is entitled to summary judgment on Orengo and the conjugal partnership's Article 1802 claims because they are time-barred.

## CONCLUSION

For the foregoing reasons, Wal-Mart's motion for summary judgment is **GRANTED IN PART.**  Specifically, Wal-Mart's requests for summary judgment on (1) the federal and Commonwealth claims for discriminatory termination, (2) the federal and Commonwealth claims for a hostile work environment, (3) the ADA retaliation claim for requesting time off for appointments and medical leave, and (4) the unjust termination claim under Law 80 are **DENIED.**  All other claims under the ADEA, ADA, Law 44, Law 100, and Law 115 are **DISMISSED WITH PREJUDICE.**  Orengo and the Negrón-Orengo conjugal partnership's claims under Article 1802 are **DISMISSED WITH PREJUDICE.**  Wal-Mart's motion to strike Negrón's statement in its entirety is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 21st day of March, 2012.

*S/ Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge